# MISC 14 1247

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – x

GENTEX CORPORATION,

                              Plaintiff,

          -against-

RONALD ABBOTT,
HELICOPTERHELMET.COM and HELICOPTER
HELMET, LLC

– – – – – – – – – – – – – – – – – – – – – – x

Underlying Litigation:
Case No. 12-CV-2549
United States District Court
for the Middle District of
Pennsylvania

## MEMORANDUM IN SUPPORT OF MOTION TO COMPEL RESPONSE TO SUBPOENA SERVED ON TRANSAERO

Respectfully submitted,

FAUST GOETZ SCHENKER & BLEE

_____
Peter Kreymer (7234)
Local counsel for Defendant Ronald Abbott
Two Rector Street, 20th Floor
New York, New York 10006
(212) 363-6900 ext 12
Fax: (212) 363-1090
Our File No.: 13005-SC
Email: pkreymer@fgsb.com

LAW OFFICES OF BRUCE J. CHASAN, LLC
Of Counsel for Defendant Ronald Abbott
(Pro Hac Vice application to be submitted)
Bruce J. Chasan (PA I.D. No. 29227)
Two Penn Center – Suite 312
1500 JFK Boulevard
Philadelphia, PA 19102
Phone:  (215) 567-4400
Fax: (215) 565-2882
Email: bjchasan@brucechasanlaw.com

i

# **TABLE OF CONTENTS**

I. INTRODUCTION. ................................................................................ 1

    A. Pleadings.......................................................................................... 1

    B. Subpoena Response from Gentex's other domestic distributor, G&B. ....... 3

II. TRANSAERO WAIVED ALL OF ITS OBJECTIONS BY NOT TIMELY
    RESPONDING OR OBJECTING TO SUBPOENA ...................................... 5

III. TRANSAERO'S LATE SUBPOENA RESPONSE CONTAINED ONLY
    TWO BASELESS GENERAL OBJECTIONS .......................................... 8

IV. PERMITTED SCOPE OF DISCOVERY IS BROAD ................................. 9

V. THE DOCUMENT REQUESTS ARE HIGHLY RELEVANT AND
    NARROWLY TAILORED ................................................................... 13

VI. CONCLUSION ................................................................................ 18

## TABLE OF AUTHORITIES

### CASES

*A&H Sportswear, Inc. v. Victoria Secrets Stores, Inc.*, 237 F.3d 198
  (3d Cir. 2000) --------------------------------------------------------------------------- 15

*Am. Health Sys. v. Liberty Health Sys.*, 1991 WL 30726
  (E.D. Pa. Mar 5, 1991) ----------------------------------------------------------------- 12

*American Civil Liberties Union v. Gonzales*, 237 F.R.D. 120
  (E.D. Pa. 2006) ------------------------------------------------------------------------- 7

*Beazer East, Inc. v. The Mead Corp.*, 2010 WL 5071762
  (W.D. Pa. Dec. 6, 2010) ------------------------------------------------------------ 11, 12

*Beyer v. Medico Ins. Group*, 266 F.R.D. 333 (D.S.D. 2009) ------------------------- 10

*Burda v. Cesare*, 50 Pa. D. & C. 3d 354 (Luzerne Cty. 1988) ------------------------ 7

*Carey-Canada, Inc. v. California Union Ins. Co.*, 118 F.R.D. 242 (D.D.C. 1986) 10

*CedarCrestone Inc. v. Affiliated Computer Services LLC*,
  2014 WL 3055355 (M.D. Pa. July 3, 2014) ---------------------------------10, 11, 12

*Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 187 F.R.D. 528  (E.D. Pa. 1999) ----- 7

*Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869
  (3d Cir.1992)-------------------------------------------------------------------------------16

*Doe v. Nebraska*, 798 F.Supp.2d 975 (D. Neb. 2011) --------------------------------- 10

*Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812
  (3d Cir. 2006) ------------------------------------------------------------------------ 16, 17

*Financial Bldg. Consultants, Inc. v. American Druggists Ins. Co.*, 91 F.R.D. 59
  (N.D. Ga. 1981) --------------------------------------------------------------------------- 9

*Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F.Supp. 159
  (D.N.J. 1988) ------------------------------------------------------------------------------10

*In re Gateway Engineers, Inc.*, 2009 WL 3296629 (W.D. Pa. Oct. 9, 2009) -------12

*Land Ocean Logistics, Inc. v. Aqua Gulf Corp.*, 181 F.R.D. 229 (W.D.N.Y. 1998) 7

*Lane v. Hartford Accident and Indemnity Co.*, 6 Pa. D. & C. 4th 537

   (Dauphin Cty.1990)------------------------------------------------------------------ 8

*Leta Associates v. Hurley*, 2011 WL 1793265 (M.D. Pa. May 11, 2011)-----------11

*Medical Technology, Inc. v. Breg, Inc.*, 2010 WL 3734719

   (E.D. Pa. Sept. 21, 2010) -----------------------------------------------------------12

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978)------------------------ 9,11

*Pacitti v. Macy's*, 193 F.3d 766 (3d Cir. 1999)------------------------------------------11

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) ----------------------------------- 9

*Temple Univ. v. Salla Bros., Inc.*, 656 F.Supp. 97 (E.D.Pa. 1986)-------------------10

*Thompson v. Glenmede Trust Co.*, 1995 WL

   (E.D. Pa. Dec. 19, 1995) --------------------------------------------------------- 11,12

*Wright v. Montgomery County*, 1998 WL 848107

   (E.D. Pa. Dec. 4, 1998) -----------------------------------------------------------------12

## STATUTES

15 U.S.C. § 1114-------------------------------------------------------------------------------- 1

15 U.S.C. § 1125-------------------------------------------------------------------------------- 1

## RULES

Fed. R. Civ. P. 26------------------------------------------------------------------------ 10, 11

Fed. R. Civ. P. 33(b)(4)------------------------------------------------------------------------ 6

## MEMORANDUM IN SUPPORT OF MOTION TO COMPEL RESPONSE TO SUBPOENA SERVED ON TRANSAERO, INC.

## I.  INTRODUCTION.

**A.  Pleadings.**  The Amended Complaint (M.D. Pa. No. 2012-CV-2549 [ECF 8]) filed by Plaintiff Gentex Corporation ("Gentex") in the Middle District of Pennsylvania alleges four counts against Defendants Ronald Abbott ("Abbott") and Helicopter Helmet, LLC ("HHC"), including Count I (Trademark Infringement under the Lanham Act, 15 U.S.C. § 1114(1)), Count II (Unfair Competition under the Lanham Act, 15 U.S.C. § 1125(a)), Count III (Common Law Unfair Competition), and Count IV (Unjust Enrichment).  The Lanham Act counts allege that Defendants' advertising and sale of "generic SPH-4B" model helmets infringe Plaintiff's registered trademarks, namely "Gentex" (Reg. No. 3505343), "SPH-4" (Reg. No. 0991107)[1] and "SPH-5" (Reg. No. 1490008).[2]  The Complaint seeks all damages allowed under the Lanham Act including "compensatory, consequential, statutory, treble and punitive damages including, without limitation, [Gentex's] lost profits, loss of goodwill and damage to its reputation, together with pre- and

---

[1]  The USPTO website discloses that the "SPH-4" mark was issued on 8/20/1974, and its second renewal was on 9/21/2004.

[2]  The USPTO website discloses that the "SPH-5" mark was issued on 5/31/1988, and its first renewal was on 6/6/2006.

1

post-judgment interest," and "restitution of all money and property unlawfully and unfairly generated by.... Abbott and [HHC] through their unfair and unlawful conduct." (Amended Complaint at 7-8). Gentex also seeks injunctive relief.

Gentex's Second Amended Complaint (No. 2012-CV-2549 [ECF 61] (Ex. A)) expanded Plaintiff's claims to allege infringement of its expired registered mark "SPH-3,"[3] an additional "Gentex" registered mark (Reg. No. 606,758), and its alleged unregistered marks "SPH" and "SPH-4B." The Second Amended Complaint re-alleged Counts I-IV and added Count V for Common Law Trademark Infringement, which asserted a legally protectable interest in the alleged "Gentex," "SPH," "SPH-4," "SPH-4B" and "SPH-5" marks. (Ex. A at 14-15).

Defendants filed Answers, Affirmative Defenses and Counterclaims to the Second Amended Complaint. (Ex. B and Ex. C (No. 2012-CV-2549 [ECF 62, 63]). Defendants have denied infringement and/or other liability-producing conduct under Counts I-V, and they have asserted affirmative defenses including but not limited to: (6) the alleged marks are generic, (7) there was fraud on the USPTO in obtaining the registered marks, (8) abandonment of the marks, (9) descriptive fair use, (10) acquiescence, (11) laches, (12) estoppel, (13) waiver, (14)

---

[3] Gentex apparently asserts the expired mark "SPH-3" is the common ancestor of its alleged "family of SPH marks." Gentex has admitted in response to a Request for Admission that it did not sell any SPH-3 model helmets in the five years immediately preceding the filing of the Complaint.

consent/license, (15) unclean hands, (16) failure to mitigate, and (17) fair use. Defendants have also asserted Counterclaims I-VI seeking, *inter alia*, cancellation of four Gentex registered marks, declaratory judgment that there is no protectable interest in the alleged marks "SPH," "SPH-3," and "SPH-4B," and an award of their attorney's fees and expenses because this is an "exceptional case."

Gentex has two principal distributors of its helmets, namely, (i) Gibson & Barnes ("G&B"), a/k/a "Flight Suits," and (ii) Transaero, Inc. ("Transaero").

**B.      Subpoena Response from Gentex's other principal distributor, G&B.**      Abbott served a subpoena on G&B, who is currently Gentex's exclusive domestic distributor, and the requests in the G&B subpoena are similar to those in the Transaero subpoena at issue in this Motion to Compel.  In response to that subpoena, G&B produced a number of documents, including a non-confidential USAARL Report No. 98-12 (FS000067-80).  (Ex.D (M.D. Pa. No. 2012-CV-2549 [ECF 99-3])). Report No. 98-12 provides an historical overview of the development and improvement of a series of U.S. Army helicopter helmets from about 1960 up to 1998.   An APH-5 model helmet was in use in the 1960's. (FS000070).   The report states:  "To increase sound attenuation, the Army accepted sound protective helmet #4 (SPH-4) shown in Figure 2, as a new standard

3

helmet in 1969." (*Id.*)[4]  As set forth in Table I of the report, there were improvements to the SPH-4 model helmet in 1974 and 1982. (*Id.*)  In 1989, another improved model was introduced, the SPH-4B, which had "new shell material, liner, fitting, retention earcup and visor system (Lower weight)." (*Id.*). In 1995, another new model, the HGU-56/P, was introduced, with "All new, general purpose and aircraft unique design (Improved impact protection)." (*Id.*) The rest of the report sets out a detailed description of the differences between various Army model helmets (including differences and distinctions between the SPH-4 and SPH-4B models), and how the models were improved over time. Terms such as "SPH-4" and "SPH-4B" are military designations for different helmet models.

As a practical matter, the SPH-4 model was supplanted by the SPH-4B model in 1989 as the Army-approved helicopter helmet, and the HGU-56/P model replaced the SPH-4B in 1995.  Abbott recently made a Freedom of Information Act request to the Defense Logistics Agency (DLA), and was informed the DLA purchased over 50,000 HGU-56/P model helmets from Gentex in the period 2003-

---

[4]  Abbott served a Request for Admission to Gentex to admit that the acronym "SPH" means "sound protective helmet."  Gentex denied the request. (*See* No. 2012-CV-2549 [ECF 79-1 and 79-2]).  Gentex's denial exemplifies its obstructionist discovery tactics in this case.  Although Defendants cannot stop Gentex from its ostrich-like tactics, there will be a boatload of evidence at trial that "SPH" means "sound protective helmet."  This will support the defense argument that "SPH" and the various "SPH" model helmets are generic terms.

2013, but no SPH-4 or SPH-4B models since 2003.  *See*  FOIA Request and Response (Ex. E and Ex. F (M.D. Pa. No. 2012-CV-2549 [ECF 99-4, 99-5])).  It thus appears that the SPH-4 model helmet is obsolete and was discontinued more than 20 years ago, and the SPH-4B model helmet was discontinued more than 15 years ago.

A visit to the G&B website on 9/17/2014 disclosed that G&B currently offers for sale only three Gentex model helicopter helmets:  SPH-5; HGU-56/P; and HGU-84.  (Ex. G (M.D. Pa. No. 2012-CV-2549 [ECF 99-6])).

## II.     TRANSAERO WAIVED ALL OF ITS OBJECTIONS BY NOT TIMELY RESPONDING OR OBJECTING TO SUBPOENA

Although Gentex's other distributor, G&B, has been cooperative and communicative, including having produced 461 pages of documents to date in response to Abbott's subpoena – with more production to come – the same cannot be said for Transaero.

Abbott served Transaero with the subpoena (Ex.H) at issue in this Motion on August 13, 2014 (see Return of Service, Ex. I).  When no response was received by the August 27, 2014, response deadline, counsel for Abbott sent a letter dated September 3, 2014, to counsel for Transaero seeking compliance with the subpoena  (Ex. J).  Transaero's counsel finally responded by letter of September 8, 2014, asserting: (i) that its client had sold only a limited quantity of Gentex's

product, which limited quantity is allegedly irrelevant to the instant litigation, and (iii) that the document request was overbroad (Ex. K). Abbott's counsel responded by letter of September 10, 2014, seeking Transaero's counsel's consent to having the instant motion heard in the Middle District of Pennsylvania, where at least one other related discovery motion would be pending (Ex. L). On September 11, 2014, Transaero's counsel replied with a letter stating that Transaero would not consent to have the motion heard in the Middle District of Pennsylvania, reiterating that "[w]e do not believe that any documents that my client might be required to produce would have any bearing, relevancy, or admissibility" in this litigation (Ex. M).

The two sole objections made by Transaero in its late response were irrelevance and overbreadth. No other objections were made to the subpoena. Transaero did not allege undue burden, confidentiality[5], or any other grounds for its non-responsiveness.

Notably, Transaero provided only two objections to the subpoena, namely, irrelevance and overbreadth of the documents sought. Pursuant to Rule 33(b)(4) of the Federal Rules of Civil Procedure, "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." *See also American*

---

[5] To the extent the parties have confidential business documents, an agreed protective order already enables preservation of confidentiality. (*See* No. 2012-CV-2549 [ECF 54, 55, and 58] (Ex. O)).

*Civil Liberties Union v. Gonzales*, 237 F.R.D. 120, 131 (E.D. Pa. 2006) (objections not stated in a timely manner are waived unless good cause is shown); *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 187 F.R.D. 528, 529 (E.D. Pa. 1999) (failure to make timely objections to discovery constitutes waiver); *see also, e.g., Land Ocean Logistics, Inc. v. Aqua Gulf Corp.*, 181 F.R.D. 229, 236 (W.D.N.Y. 1998) (failure to respond or object to a discovery request in a timely manner waives any objection which may have been available).

In Pennsylvania, state courts frequently reach similar conclusions when applying state law and discovery rules.  In *Burda v. Cesare*, 50 Pa. D. & C.3d 354, 1988 WL 168507 (Luzerne Cty. 1988), a plaintiff argued that all of the defendant's objections to interrogatories had been waived since they were made after the thirty-day period required by the rules.  The defendant asserted that he did not have to answer the interrogatories, alleging that the information was irrelevant, and maintained that the rule does not state that belated objections are waived. The trial court held that, "[w]hile this may be true [that there is nothing to suggest that failing to file objections within 30 days waives those objections], it is also true that the rule does not prohibit a finding that objections not made within 30 days are deemed waived. Numerous courts have so interpreted and this court believes that such a holding best promotes the spirit of the rules."

Similarly, in *Lane v. Hartford Accident and Indemnity Co.*, 6 Pa. D. & C.4th 537, 1990 WL 300276 (Dauphin Cty. 1990), the trial court concluded that the filing of objections to interrogatories and requests for production of documents within thirty days under rules 4006 and 4009 is mandatory, and that the failure to timely object will result in the waiver of the objections. In interpreting the language of the relevant rules, the trial court found there was no ambiguity about the meaning of the terms "shall" and "30 days" and thus found that where a timely objection is not made to interrogatories or production of documents, the right to object is waived.

Transaero and its counsel did not respond until September 8, 2014, to the subpoena whose deadline was August 27, 2014 – and only then, five days after receiving a letter from Abbott's counsel threatening a motion to compel.  Thus, by *failing to respond at all* to the subpoena before the response deadline, Transaero has lawfully waived all objections that may have been available to it.

## III.   TRANSAERO'S LATE SUBPOENA RESPONSE CONTAINED ONLY TWO BASELESS GENERAL OBJECTIONS

Should the Court excuse the delay in Transaero's counsel's 12-day-late, two-objection response, the Court should still find that Transaero's two general objections have no merit.

The dispute addressed by this Motion to Compel concerns Transaero's refusal to provide discovery based on general objections of relevancy and overbreadth, in the face of Gentex's admission that Transaero is one of two principal distributors of the helmets at issue in the litigation. Transaero's objections are without merit. The scope of the discovery requests is both relevant and narrowly tailored. There is no legitimate reason to withhold the requested discovery, and Transaero's blanket refusal to comply with these reasonable discovery requests is inexcusable. Abbott respectfully requests that the Court order Transaero to comply with the basic and reasonable discovery that has been requested in Abbott's subpoena.

## IV. PERMITTED SCOPE OF DISCOVERY IS BROAD

It is well-settled that discovery regarding the pleaded claims and defenses is broad. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978) (relevance construed broadly to encompass any matter that bears on, or could reasonably lead to other matter that could bear on, any issue that is or may be in the case); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 29-30 (1984) (discovery not limited to matters admissible at trial); *Financial Bldg. Consultants, Inc. v. American Druggists Ins. Co.*, 91 F.R.D. 59, 61 (N.D. Ga. 1981) ("what is relevant during pretrial discovery and what is admissible during trial are two different

things, the former being broader than the latter."). Corporate books and records, other business records, and contracts with non-parties are discoverable. *See Temple Univ. v. Salla Bros., Inc.*, 656 F.Supp. 97, 112 (E.D. Pa. 1986); *Carey-Canada, Inc. v. California Union Ins. Co.*, 118 F.R.D. 242, 244-45 (D.D.C. 1986); *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F.Supp. 159, 167-68 (D.N.J. 1988). Where relevant documents are requested, discovery will not be excused because responding is time-consuming and expensive. *Beyer v. Medico Ins. Group*, 266 F.R.D. 333, 337 (D.S.D. 2009) (fact that answering discovery requests will be burdensome and expensive is not, in itself, reason for court to refuse to order discovery); *Doe v. Nebraska*, 788 F.Supp.2d 975, 981 (D. Neb. 2011) (same).

The scope of permissible discovery is provided in Federal Rule of Civil Procedure 26(b)(1), which states that"[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense - including the existence, description, nature, custody, condition and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1).

The Rules permit discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense," and discovery "is not limited to the precise issues set out in the pleadings." *CedarCrestone Inc. v. Affiliated Computer*

10

*Services LLC*, No. 14-0298, 2014 WL 3055355, at *4 (M.D. Pa. July 3, 2014) (citations omitted); *see also* Fed. R. Civ. P. 26(b)(1). Rather, "discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action," and "[r]elevancy is to be broadly construed for discovery purposes." *CedarCrestone Inc.*, 2014 WL 3055355, at *4 (citations omitted) ("[D]iscovery rules are to be accorded broad and liberal construction."); see also *Oppenheimer,* 437 U.S. 340 at 351 (relevancy "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other mater that could bear on, any issue that is or may be in the case").

"It is axiomatic that the federal rules allow broad and liberal discovery." *Beazer East, Inc. v. The Mead Corp.*, No. 91-408, 2010 WL 5071762, at *2 (W.D. Pa. Dec. 6, 2010) (*citing Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999)); *Leta Associates v. Hurley*, No. 09-2487, 2011 WL 1793265, at *5 (M.D. Pa. May 11, 2011) (holding that even where the subpoena was "very broad in its sweep," it still "fell well within Rule 26's expansive definition of relevant evidence").

Although Federal courts have imposed broader restrictions on the scope of discovery when a non-party is targeted, *see Thompson v. Glenmede Trust Co.*, No. CIV.A. 92-5233, 1995 WL 752422, at *2 n.4 (E.D. Pa. Dec. 19, 1995) (Hutton, J.) (citations omitted), discovery rules are to be accorded broad and liberal

11

construction. *Wright v. Montgomery County*, No. CIV.A. 96- 4597, 1998 WL 848107 (E.D. Pa. Dec. 4, 1998) (citing *Am. Health Sys. v. Liberty Health Sys.*, No. 90-3112, 1991 WL 30726, at *2 (E.D. Pa. Mar. 5, 1991) (Naythons, J.)). The relevance standard depends on the context of the particular action, and the determination of relevance is within the district court's discretion. *Thompson*, 1995 WL 752422 at *2 n.4.

Transaero's non-party status does nothing to alter the relevance or discoverability of the requested documents. Indeed, the "exceedingly broad standard of relevancy" applies equally "to a subpoena seeking material from a non-party," and courts routinely permit discovery of relevant information from non-parties. *In re Gateway Engineers, Inc.*, No. 09-209, 2009 WL 3296629, at *3 (W.D. Pa. Oct. 9, 2009); *see also CedarCrestone Inc.*, 2014 WL 3055355, at *7 (denying motion to quash non-party subpoena); *Lefta Associates*, 2011 WL 1793265, at *3 (same); *Medical Technology, Inc. v. Breg, Inc.*, No. 10-mc-00100, 2010 WL 3734719, at *5 (E.D. Pa. Sept. 21, 2010) (same). As the discovery requests are plainly relevant to Gentex's claims and the Defendants' defenses and counterclaims in the underlying litigation, the Transaero subpoena does not exceed the "broad and liberal" bounds of discovery permitted under the federal rules, *See Beazer East*, 2010 WL 5071762, at *2.

## V.   THE DOCUMENT REQUESTS ARE HIGHLY RELEVANT AND NARROWLY TAILORED

Transaero, the recipient of the subpoena, is a distributor of the Plaintiff, Gentex, and is in the relatively unique position of being one of two principal distributors for the Gentex products at issue in this litigation.  Without even considering the particulars of Abbott's discovery requests, a strong inference can be drawn from this relatively unique position that Transaero has relevant documents in its possession, which should not be withheld from Abbott.

A closer examination of the particular materials requested and the underlying reasons for the requests affirms the relevance of all of Abbott's discovery requests.  Specifically, the document requests relate, *inter alia*, to issues of infringement, affirmative defenses, counterclaims, damages, and the possible cancellation of one or more of Gentex's federal trademark registrations.  Abbott is entitled to any Transaero documents that are useful to counter the allegations of infringement, support his affirmative defenses and counterclaims, assist in calculating Gentex's alleged damages, and determine whether Gentex should be entitled to keep all of its current trademark registrations.[6]

---

[6]  In this connection, it is presumptuous for Transaero's counsel to decide what documents are relevant to Abbott's defenses of non-infringement, affirmative defenses, counterclaims, entitlement to a damages inquiry, and right to obtain evidence supporting the cancellation of Gentex's registration.  That prerogative is reserved to Defendants' counsel.

The following factors, deemed the "*Lapp* factors," are considered to determine likelihood of confusion in the Third Circuit:

(1) the degree of similarity between the owner's mark and the alleged infringing mark;

(2) the strength of the owner's mark;

(3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;

(4) the length of time the defendant has used the mark without evidence of actual confusion arising;

(5) the intent of the defendant in adopting the mark;

(6) the evidence of actual confusion;

(7) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media;

(8) the extent to which the targets of the parties' sales efforts are the same;

(9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors;

(10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to

manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market.

*A&H Sportswear, Inc. v. Victoria Secrets Stores, Inc.*, 237 F.3d 198, 215 (3d Cir. 2000).

Request 1 seeks Transaero's agreements with Gentex, including its distributorship and licensing agreements, relating to Transaero's use of Gentex's claimed intellectual property, and including documents evidencing compensation from Gentex. Request 2 seeks documents, such as sales, advertising, and budgeting materials, regarding Gentex' s supervision of Transaero's use of Gentex' s claimed intellectual property, including the trademarks Gentex is asserting against Abbott in this litigation. Request 3 seeks Transaero's documents relating to the use of Gentex's trademarks. Request 4 seeks Transaero's documents about Transaero purchases of products bearing Gentex's trademarks.

Requests 1-4 are highly relevant to, *inter alia*, *Lapp* Factors 2, 3, 7, and 8, including, e.g., strength of Gentex's marks, the price of the goods at issue, the care and attention expected of the purchasing consumer, the channels of trade for marketing, and the targets of the parties' sales efforts. The documents sought also bear strongly on a calculation of Gentex's alleged lost profits that it seeks as damages. Moreover, these documents are relevant because "trademark licensing is permitted so long as the licensor maintains adequate control over the nature and

quality of goods and services sold under the mark by the licensee," whereas "[f]ailure to provide quality control may constitute naked licensing, leading to abandonment of the mark." *Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 823 (3d Cir. 2006) (citing *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 873 (3d Cir. 1992)).  Thus, these documents are also relevant to the impending cancellation of Gentex's trademark registrations.   Additionally, these documents are relevant of the Defendants' affirmative defenses of genericness, abandonment, descriptive fair use, acquiescence, estoppel, waiver, and fair use.

Requests 5 and 6 seek documents about safety and testing of Defendants' products, as well as products bearing Gentex's asserted trademarks.  Requests 7 and 13 relate to documents about Defendants' and Defendants' helmets and parts, including favorable comments, complaints, and communications with Defendants.  Request 8 relates to performance specifications and standards associated with Gentex helmets.  Requests 9 and 10 relate to customer complaints about Gentex helmets, as well as product returns and customer surveys.  Request 11 seeks documents about cracking of the shell of a particular Gentex helmet.

Gentex's complaint alleges that Defendants sell substandard helmets (Ex. A. ¶¶11, 15-18).  In addition to Requests 5-11 and 13 being specifically relevant to a comparison of the standards of the parties' respective products in light of Gentex's

16

assertion of substandard quality, the documents sought are relevant to, *inter alia*, *Lapp* factor 9, *i.e.*, the relationship of the parties' goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors.  These factors also bear on *Lapp* factor 6, *i.e.*, possible evidence of actual consumer confusion, as well as *Lapp* factors 7 and 8, namely, the channels of trade for marketing, and the targets of the parties' sales efforts.  Additionally, these documents are relevant of the Defendants' affirmative defenses of genericness, abandonment, descriptive fair use, acquiescence, estoppel, waiver, consent/license, and fair use.

Request 12 seeks documents relating to generic helmets bearing Gentex's alleged marks and variants of those marks that are sold by Gentex's competitors. The documents sought in this request are relevant to, *inter alia*, *Lapp* factor 2, *i.e.*, the strength of the asserted marks; *Lapp* factor 3, *i.e.*, the care and attention expected of the purchasing consumer; *Lapp* factor 6, *i.e.*, possible evidence of actual consumer confusion; *Lapp* factor 9, *i.e.*, the relationship of the parties' goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors.  Such documents are also important because "[f]ailure to provide quality control may constitute naked licensing, leading to abandonment of the mark," *Doeblers' Pennsylvania Hybrids*, 442 F.3d at 823, and so these documents are also relevant to the potential

cancellation of Gentex's trademark registrations. Additionally, these documents are relevant of the Defendants' affirmative defenses of genericness, abandonment, descriptive fair use, acquiescence, estoppel, waiver, consent/license, and fair use.

Transaero's general objections were to overbreadth and irrelevance. As can be seen from the above, although broad discovery is indeed permitted, the scope of the subpoena to Transaero was nevertheless deliberately narrowly tailored and highly relevant to issues in the present litigation.

Transaero has provided nothing more than conclusory statements to support its contentions and has provided no affidavits or declarations in support of its position – just two general objections.

On the other hand, Abbott has shown that its requests are highly relevant and narrowly tailored. Thus, Transaero has failed to prove that the subpoena seeks irrelevant information or is overbroad.

## VI. CONCLUSION

For all of the foregoing reasons, the Court is requested to grant Defendants' Motion to Compel, and require Transaero to provide all documents subject to the subpoena at issue, together with such other and further relief as this Court may deem just and proper.

18

Respectfully submitted,

FAUST GOETZ SCHENKER & BLEE

Peter Kreymer (7234)
Local counsel for Defendant Ronald Abbott
Two Rector Street, 20th Floor
New York, New York 10006
(212) 363-6900 ext 12
Fax: (212) 363-1090
Email: rschenker@fgsb.com

LAW OFFICES OF BRUCE J. CHASAN, LLC
Of Counsel for Defendant Ronald Abbott
(Pro Hac Vice application to be submitted)
Bruce J. Chasan (PA I.D. No. 29227)
Two Penn Center – Suite 312
1500 JFK Boulevard
Philadelphia, PA 19102
Phone:  (215) 567-4400
Fax: (215) 565-2882
Email: bjchasan@brucechasanlaw.com

DATED: _10 - 7 - 14_

19